**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

Nin El Ameen Bey,
Kamiylah A. El Ameen Bey and
Eloha N. El Ameen Bey,

Plaintiffs,

v.

John Stumpf et al.,

Defendants.

Civil Action No. 11-5684 (RBK)

**OPINION**

This matter comes before the Court upon the Clerk's receipt of two submissions (docketed in this matter as Docket Entries Nos. 1 and 1-1). For the reasons expressed below, Plaintiffs' submission docketed as Docket Entry No. 1-1 (made, seemingly, in lieu of their applications to proceed in this matter in forma pauperis), will be denied without prejudice, and Plaintiffs' other submission (docketed as Docket Entry No. 1) will be dismissed with a clarification that: (a) to the degree this submission was striving to operate as a civil complaint, it will be dismissed without prejudice to Plaintiffs' filing of a clear and concise pleading showing their entitlement to relief, in compliance with this Court's guidance provided below; and (b) to the degree this submission was striving to operate as a document "registering" Plaintiffs' rights, of any kind, simply by the virtue of having this submission entered on this District's docket, this submission will be deemed stricken from the docket with an express statement that the docket sheet created in this matter cannot be used, directly or indirectly, as a source or evidence of any right conferred upon Plaintiffs.

## I. BACKGROUND

The submissions made in this matter cannot be understood without: (a) an overview of analogous actions instituted in this District and other federal courts; and (b) at least partial replication of the submissions made in the case at bar. Since these submissions are fashioned in the style that would likely confuse the reader having no familiarity with this type of actions, the Court finds it warranted to begin its discussion with a summary of relevant prior cases.

### A. *Murakush -Amexem* Proceedings and Analogous Actions in This District

One of the recent proceedings of this type was adjudicated by this Court in Murakush Caliphate of Amexem Inc. v. New Jersey ("Murakush-Amexem"), __ F. Supp. 2d __, 2011 U.S. Dist. LEXIS 51887 (D.N.J. May 13, 2011). There, this Court detailed as follows:

> **1. Moorish and Redemptionist Movements**
>
> Two concepts, which may or may not operate as interrelated, color the issues at hand. One of these concepts underlies ethnic/religious identification movement of certain groups of individuals who refer to themselves as "Moors," while the other concept provides the basis for another movement of certain groups of individuals, which frequently produces these individuals' denouncement of United States citizenship, self-declaration of other, imaginary "citizenship" and accompanying self-declaration of equally imaginary "diplomatic immunity."
>
> [a]. Moorish Movement
>
> In 1998, the United States Court of Appeals for the Seventh Circuit – being one of the first courts to detail the concept of Moorish movement, observed as follows:
>
> > [The Moorish Science Temple of America is a] black Islamic sect . . . . [T]hree-fourths of its temples (congregations) are inside prisons. The Moors, as adherents to the Moorish Science Temple are called, have their own version of the Koran and a list of prophets that includes, in addition to the prophets recognized by orthodox Islam, Buddha, Confucius, and the founder . . . of the Moorish Science Temple . . . . Two groups vie for leadership of the sect: one in Mt. Clemens, Michigan, headed by [someone referred to as] Grand Sheik/Moderator Brother R. Love-El, and one in St. Louis headed by [someone referred to as]

> Grand Sheik Jerry Lewis-Bey. (The suffixes “El” and “Bey” refer to the African tribes from which the Moors believe black people are descended.)

Bey v. Lane, 863 F.2d 1308, 1309 (7th Cir. 1998).[1]

[b]. “Redemptionism,” “Paper Terrorism” and Related Concepts

Shortly after the concept of Moorish movement was outlined by the Seventh Circuit, discussions of another movement appeared on the pages of legal opinions issued by the federal judiciary; that other movement was dubbed as “sovereign citizenship” movement. This movement was fostered by

> a loosely organized collection of groups and individuals who have adopted a right-wing anarchist ideology originating in the theories of a group called the Posse Comitatus in the 1970s. Its adherents believe that virtually all existing government in the United States is illegitimate . . . . [Therefore, such] “sovereign citizens” wage war against the government and other forms of authority using “paper terrorism” harassment and intimidation tactics, and occasionally resorting to [physical] violence.

Sovereign Citizen Movement, Anti-Defamation League, at <<http://www.adl.org/Learn/ext_us/SCM.asp?LEARN_Cat=Extremism&LEARN_SubCat=Extremism_in_America&xpicked=4&item=sov>> (visited on Mar. 31, 2011).[2]

---

[1] The underlying term “Moors” seemingly reflects the adherents’ interest in highlighting their actual or alleged “ancestry in ancient Moors, i.e., the seventeenth century Muslims of the Islamic Iberian Peninsula and North Africa, who were of Berber and Arab descent.” Marrakush Soc'y v. N.J. State Police, 2009 U.S. Dist. LEXIS 68057, at *4, n.1 (D.N.J. July 30, 2009).

[2] The concept of “sovereign citizenship” does, occasionally, relate to the phenomenon of “world passports.” “World passports,” issued by the so-called World Service Authority (“WSA”), are not recognized, in the United States and in the majority of world nations, as substitutes to official documents, such as national passports or drivers’ licenses. See, e.g., Eugenio J. Huot Calderon, The Concept of Puerto Rican Citizenship, 35 Rev. D.P. 321, 333-36 (1996); <<http://web.archive.org/web/20080307015819/http://foia.state.gov/masterdocs/07fam/07m1310.pdf>>. A former-World-War-II-bomber-pilot-turned-peace-activist Garry Davis created the WSA in 1953 after renouncing his U.S. citizenship and gaining notoriety by picketing the United Nations to argue that world peace requires a global government rather than a system of nation-states. See Daniel Engber, What's a World Passport? Slate Mag. (Mar. 24, 2006). The WSA has been promoting “world citizenship” by issuing documents largely similar in their appearance to regular national passports, which the WSA called “world passports,” to any person who wanted to declare himself/herself “a citizen of the world.” One can inexpensively obtain such “passport” by filling out an application form at the WSA website. See <<http://www.world

Consequently, a decade after the Seventh Circuit's issuance of Bey v. Lane, the United States Court of Appeals for the Third Circuit noted a stream of government actions aimed at controlling the "paper terrorism" activities of sovereign citizens, which – by then – matured into a wide-spread criminal scheme, where the scheme participants' "self-legitimized" their names for the purposes of initiating fraudulent legal transactions. The Court of Appeals explained:

> Evidently, [adherents of this scheme have been] filing [fraudulent] financing statements under Article 9 of the UCC, which sets forth a process for perfecting security interests in property. These liens and judgments, accessible on financing statement forms, are easy to file. Once registered, however, the fraudulent liens are very burdensome to remove. For example, in a New Jersey incident, [one group] registered a fraudulent $ 14.5 million lien with the New Jersey Department of Revenue against a federal prosecutor and a $ 3.5 million lien against a federal judge for using [the group participants'] "copyrighted" names in court papers and hearings . . . . [Adherents of this scheme] have filed these commercial liens with state departments of revenue, departments of state, or other the state agencies responsible for receiving and recording these financial instruments. Further investigation revealed that various publications were advocating the exploitation of the UCC filing process and provided explicit instructions on how to perfect these fraudulent security interests, including sample financing statements forms. [These publications built on] the "Redemptionist" theory, which propounds that a person has a split personality: a real person and a fictional person called the "strawman." . . . Redemptionists claim that government has power only over the strawman and not over the live person, who remains free [and, thus,] individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, [pursuant to this "theory,"] the real person can demand that government officials pay enormous sums of money to use the

---

government.org/>>. Therefore, while some persons just denounce their United States citizenship under the claim of sovereign citizenship, see, e.g., Roche v. Attorney General, 2011 U.S. App. LEXIS 5773, at 1-2, nn. 1 and 2 (3d Cir. Mar. 21, 2011), others accompany their denouncements of United States citizenship by applications for "world passports" and attempts to use these passports as legally cognizable documents, sometimes for the purposes of perpetrating criminal schemes in the United States. See, e.g., Asghar v. State, 698 N.E.2d 879 (Ind. Ct. App. 1998). Moreover, a person's denouncement of his/her United States citizenship (being occasionally accompanied by the person's obtaining of a "world passport") frequently produces a peculiar "side effect" in the form of that person's self-grant of alternative, imaginary citizenship which, in turn, results in that person's insistence upon his/her "diplomatic immunity" for the purposes of United States law or, better say, for the purposes of the "grantee's" attempts to avoid the reach of law. See, e.g., U.S. Dist. Court v. Ephriam, 2009 U.S. Dist. LEXIS 103284 (D. Kan. Nov. 4, 2009).

> strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, [adherents of this scheme] file liens against [government officials] . Adherents of this scheme also advocate that [they] copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

Monroe v. Beard, 536 F.3d 198, 203 and nn. 3 and 4 (3d Cir. 2008); accord Roche, 2011 U.S. App. LEXIS 5773, at 2 (noting that the "sovereign citizen" litigant elected to present the district court's dismissal of his petition as a "contract" between the court and the litigant).

The "strawman" concept is, occasionally, presented/exploited somewhat differently by those redemptionists who claim that – at the moment of their denouncement of United States citizenship and/or their accompanying self-grant of imaginary alternative citizenship – their "strawman" incarnation became "deceased," and their live persons quasi-expatriated from the U.S. (while continuing their actual physical residence in the United States). In connection with this odd quasi-expatriation scheme, such redemptionists often claim that their live persons: (a) hold "estates" in the form of actual physical bodies of their respective "quasi-deceased" strawmen;[3] and (b) reside in geographic locales "self-claimed away" from the United States.

[c]. Interplay Between Moorish and Sovereign Citizenship Movements

It does not appear that one's Moorish ethnic roots (or Moorish religious convictions, or both) have any reason to go hand-in-hand with one's adhesion to the sovereign citizenship movement (or with one's professing the theory of redemptionism, or with one's practice of "paper terrorism," claims of self- granted "diplomatic immunity," etc.).

---

[3] This "estate" concept is legally deficient on its face. As one court explained,

> [such] "estates" of [litigants] cannot qualify as [actual] litigants since [these "estates"] offer no order by a probate court acknowledging the existence of these "estates" and, indeed, it would be surprising had such order been entered because it is well established that the body of a decedent cannot be an estate, or even a part of an estate. See Greneker v. Sprouse, 263 S.C. 571, 574 (1975) (clarifying that the estate is limited to the real and personal property of a decedent); see also In re Estate of Medlen, 286 Ill. App. 3d 860, 864 (Ill. App. Ct. 1997) (explaining that "there is no property right in a dead body, and the body forms no part of the decedent's estate . . ." and citing 22A Am. Jur. 2d Dead Bodies §§ 2 and 3 and In re Estate of Fischer, 1 Ill. App. 2d 528, 535, 117 N.E.2d 855 (Ill. App. Ct. 1954)); In re Estate of Moyer, 577 P.2d 108, 110 (Utah 1978) (same); Snyder v. Holy Cross Hospital, 30 Md. App. 317 (Md. App. Ct. 1976) (same).

Estate of Casimir v. New Jersey, 2009 U.S. Dist. LEXIS 78113, at *9 (D.N.J. Aug. 31, 2009).

> However, and unfortunately enough, certain groups of individuals began merging these concepts by building on their alleged ancestry in ancient Moors (and/or on their alleged or actual adhesion to Moorish religious convictions) for the purposes of committing criminal offenses and/or initiating frivolous legal actions on the grounds of their self-granted "diplomatic immunity," which these individuals deduce either from their self-granted "Moorish citizenship" and from their correspondingly-produced homemade "Moorish" documents (or from correspondingly-obtained "world passports") or from a multitude of other, equally non-cognizable under the law, bases, which these individuals keep creating in order to support their allegations of "diplomatic immunity."[4]

Murakush-Amexem, _ F. Supp. 2d __, 2011 U.S. Dist. LEXIS 51887 at *2-12 (footnotes in original).

### 2. Relevant Information Provided in Cases Preceding *Murakush-Amexem*

The above-quoted Murakush-Amexem decision built on a prior determination reached in this District with regard to a group of nineteen actions of this type (hereinafter, collectively, "Marrakush Cases"). See Marrakush Soc'y v. N.J. State Police, 2009 U.S. Dist. LEXIS 68057 (D.N.J. July 30, 2009). Addressing the submissions made in these nineteen actions, the Marrakush Cases court noted that the filings "were heavily peppered by references to the Barbary Treaties, United Nations documents, United States Constitution, . . . United States President, etc.,

---

[4] Such claims of "diplomatic immunity" are without merit. As it was already observed,

> [Plaintiffs err in conflating their] expatriation and [diplomatic] immunity arguments, since: (a) Plaintiffs seem to focus on an irrelevant fact that anyone may renounce his/her United States citizenship, but this fact in no way establishes that Plaintiffs actually expatriated in accordance with the applicable legal requirements, see, e.g., Memorandum Opinion for the Solicitor General of June 12, 2000, . . . ; Marks v. Esperdy, 315 F.2d 673 (2d Cir. 1963) . . . ; and (b) even if the Court were to hypothesize that Plaintiffs duly expatriated, the fact of expatriation has no effect on the state court's jurisdiction to conduct Plaintiffs' criminal proceedings. See, e.g., Cohen v. Little Six, Inc., 543 N.W.2d 376 (Minn. Ct. App. 1996); see also Cara S. O'Driscoll, The Execution of Foreign Nationals in Arizona, 32 Ariz. St. L.J. 323 (2000); [accord] Casanova v. Fitzpatrick, 214 F. Supp. 425 (S.D.N.Y. 1963) . . . .

Casimir, 2009 U.S. Dist. LEXIS 78113, at *19, n. 8 (parenthetical explanations omitted).

[incuded] copies of . . . the Barbary Treaties, the United Nations Declaration on the Rights of Indigenous Peoples, etc., . . . pages of homemade quasi-documents, . . . flocks of apostles certifying unspecified documents . . . and analogous incomprehensible paperwork. All these submissions were heavily laden with Arabic and quasi-Arabic terminology, designations of geographic locales composed . . . of Earth coordinates combined with references to imaginary 'principalities' and 'territories,' . . . and riddle-like, self-created 'Marrakush' argot." Murakush-Amexem, _ F. Supp. 2d __, 2011 U.S. Dist. LEXIS 51887 at *20-22 (footnotes and citations to Marrakush Cases omitted).

Collecting cases of this type, which had been filed in other federal district courts, the Marrakush Cases court noted, inter alia, that: (a) some cases of this type were initiated by individuals who were defined as a "'squatters [who were taking] over vacant home[s],'" Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, *41; and, in addition, (b) other cases of this type were instituted not with any litigation in mind but, rather, as a result of the litigants' desire to create an appearance that their claims, paperwork, etc. were "legitimized" as a result of having their paperwork simply entered on the docket of a federal court.

> The action commenced [by these type of litigants] in the Eastern District of New York appears to be, simultaneously, the most puzzling and the most instructive . . . . See In re El, [Civil Action No.] 09-406 (E.D.N.Y). Initiated shortly after termination of the [actions initiated by these litigants in the [S.D. Fla., this E.D.N.Y. action] remained unassigned until its termination. . . . [T]he information provided in both the [E.D.N.Y.] docketed and non-docketable submissions suggests that [these litigants] commenced that [E.D.N.Y.] matter in hope to obtain a certain aura of legitimacy . . . through the very fact of the filings made with the [E.D.N.Y.] Specifically, the docket in [E.D.N.Y. a]ction reflects [inter alia] . . . a massive compilation of homemade "apostilles" generated by [these litigants], allegedly pursuant to "the laws of nature." These homemade "apostilles" were attached to . . . numerous homemade documents titled "promulgation proclamation" . . . , a homemade "copy certification by record custodian" . . . as well as pages and pages of a peculiar "Notice of U.S. Person/Entity/Item Dissolution" composed of a virtually

> incomprehensible chain of quasi-legalese. See id., Docket Entry No. 1. [These litigants later] used the fact of submissions made in the Eastern District of New York to create an impression in this District that [these litigants'] "credentials" were "on file" with the Eastern District of New York. While imitating -- or, at the very least, striving to imitate -- official documents, none of these submissions stated a single claim. See id. In fact, they did not contain even a vaguest hint as to an actual intent to initiate a legal suit. Rather, accompanied by the filing fee of $ 39, these documents suggest nothing but [these litigants'] mere interest in having [these submissions] "placed on file" with a federal court.

Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, *46-49 (footnote 29 incorporated in the main text).

### 3. Disposition Reached in *Murakush-Amexem* and Preceding Cases

In Murakush-Amexem, well in sync with the typical litigation mode employed in this type of cases, the Murakush-Amexem litigants: (a) did not submit a proper in forma pauperis ("IFP") form, substituting it by a homemade "promissory bond"; and, in addition (b) composed their pleading out of incomprehensible "Marrakush argot," thickly peppered with quasi-Arabit terms, self-created designations of political and geographic territories, Earth coordinates, senselessly mixed-in Latin phrases and references to the Barbary Treaties. See Murakush-Amexem, _ F. Supp. 2d __, 2011 U.S. Dist. LEXIS 51887 at *49-58.

Addressing the insufficiency of the litigants' IFP application, this Court explained:

> [T]he Court notes its concern with the members of Murakush-Amexem initial attempt to be "creative" by submitting . . . a homemade "bond" [instead of an actual and duly completed IFP form, since] such "creativity" suggests only mockery of the Court rather than suitability for IFP status.

Id. at *65.

Detailing other problems associated with this type of submissions, the Court observed:

> The history of [this type of cases in this District] and other district cases . . . indicate[s] that [the federal judiciary] faces an apparent challenge in [controlling these actions]. This challenge ensues from these individuals' practice of:

. . .

b. fashioning flocks of names for their mushrooming creations, with some of these names sounding alike, e.g., “Murakush” -“ Marrakush” - “Marankokush,” and others sounding entirely different/unrelated, e.g., “Imperial Temple,” “Intercontinental Union,” “Moorish-al-Marikanos Corporation,” “Timbuctoo Territory,” “Samal Shariq Region,” “Indigenous Land,” “Aboriginal Law Firm,” etc., and

c. producing mile-long self-granted title-like “attributes” at the same lightning speed, [e.g.,] “Universal Supreme Allah,” “Minister Plenipotentiary High Priest Noble Æmer,” “Divine Minister Plenipotentiary Noble Æmer,” “Sheik Shaman,” “High Priestess Æmpress,” “Caliph,” “Shaikhess Financial Officer,” . . . while garnishing these attributes with a mere handful of letters . . . or just with “Bey” or “El” suffixes, all of which are insufficient for the purpose of clear identification of the actual persons hiding behind such smoke-and-mirrors.

Id. at *77-78.

In addition, the Court also noted a certain issue present in all actions of this type:

This unique issue spurs from a single feature present virtually in every submission made [in this type of cases]: that feature is these litigants’ nearly invariable invocation of the Barbary Treaties (and, specifically, the Treaty of Morocco) in the context of challenging their searches, arrests, confinements, criminal proceedings, bails, fees, convictions, etc. that took place entirely within the United States territory and were effectuated by the law enforcement and judicial officers of the States of New Jersey, Delaware, Virginia, Florida, etc.

All provisions of the Treaty with Morocco are, however, wholly inapposite to the type of challenges . . . . As noted supra, the Treaty with Morocco was executed, as all Barbary Treaties, with the aim to: (a) eliminate, or at least curtail, the ill of piracy plaguing the coastal waters and ports of the post-medieval North African geopolitical bodies; and (b) eliminate, or at least halt the rise of, the fees charged by the rulers of these geo-political bodies to the then-developing American merchantry for keeping “peace” in the ports and coastal waters subject to their dominion. See Frank Lambert, The Barbary Wars: American Independence in the Atlantic World (2007). It is, therefore, hardly surprising that the bulk of the provisions of the Barbary Treaties: (a) focused on issues of maritime/admiralty, war, merchant purchases/sales and akin matters; and (b) were set forth in terms of protections of “vessels.”

This is particularly obvious in the Treaty with Morocco, which was a short accord consisting of mere twenty-five Articles, with only three Articles focusing not on acts of war, vessels, merchant activities, etc. but on the acts against generic civilian human beings. See 1836 U.S.T. LEXIS 10, arts. 6, 20 and 21. . . . None of these three Articles

could be read as applying to habeas or civil rights claims raised by [the "Murakush" litigants] against state police or prosecutorial officers, or judges, as to the claims based on the events of [their] arrests, incarceration, bailing, prosecution, convictions, etc. See, e.g., Seals-Bey v. Cross, 2010 U.S. Dist. LEXIS 87794 (N.D. W. Va. July 23, 2010) . . . . Indeed, Article Six of the Treaty, was fashioned to prevent undue enslaving of American citizens (and also to prevent theft of American citizens' goods) in the Mediterraneans by pirating Moors who were either of Morrocan or of non-Morrocan domicile and who were taking undue advantage of the passage ways, trade, accommodations, etc. in Moroccan coastal waters and ports. This Article is facially inapplicable to the [events which did] not occur anywhere near the coastal waters and ports of the Kingdom of Morocco and, to top it all off, were not conducted by Moors. See Thomas H. Lee, The Safe-Conduct Theory of the Alien Tort Statute, 106 Colum. L. Rev. 830, 876 (2006) (under the "Treaty with Morocco, . . . the locus of the [T]reaty partners' interaction [was] confined to the Mediterranean and therefore not within the [geographical] jurisdiction of the United States"); accord Pitt-Bey v. District of Columbia, 942 A.2d 1132 (D.C. 2008) (a self-proclaimed "Moorish" minister has no diplomatic immunity protection from criminal proceedings conducted within the United States territory). Analogously, Articles Twenty and Twenty-One of the Treaty are facially inapplicable to [the "Murakush' litigants], since they had no right to consular assistance, and no United States citizen killed or wounded them in the Mediterranean: all the events they complaint about occurred] well within the borders of the United States . . . . See United States v. Casey, 2005 U.S. Dist. LEXIS 39785 (E.D. Mo. July 21, 2005) (the decision to criminally prosecute a self-declared "Moor" is constitutionally independent of any consular interest in assistance) (citing United States v. Ortiz, 315 F.3d 873, 886 (8th Cir. 2002); United States v. De La Pava, 268 F.3d 157, 165-66 (2nd Cir. 2001); United States v. Emuegbunam, 268 F.3d 377, 391-94 (6th Cir. 2001); United States v. Lombera-Camorlinga, 206 F.3d 882, 885-86 (9th Cir. 2000); United States v. Cordoba-Mosquera, 212 F.3d 1194, 1195-96 (11th Cir. 2000)). Two conclusions ensue from the aforesaid analysis. The first one is that all . . . claims challenging any events . . . that occur within what is the United States' actual geographical territory (and, especially, if these events involve those individuals who reside within that territory) cannot implicate *any* provision of the Treaty with Morocco. The second conclusion, building on the prior one, is that all such . . . claims . . . are necessarily frivolous which, in turn, means that any pleading asserting such claims is not bona fide and warrants no examination on merits.

> [I]t is well-recognized . . . that such organizations as the Moorish American Nation and [similar imaginary creations, like] the Nation of Washitaw, are:
>
> > notorious organization[s] of scofflaws and ne'er-do-wells who attempt to benefit from the protections of federal and state law while simultaneously proclaiming their independence from and total lack of responsibility under those same laws. Sanders-Bey v. United States, 267 F. App'x 464, 466 (7th Cir.2008) (finding that "the Washitaw Nation . . . is not recognized by

> > the United States government"); Bybee v. City of Paducah, 46 F. App'x 735, 736-37 (6th Cir.2002) (finding that the "Nation of Washitaw" is "fictional"); United States v. Gunwall, 1998 U.S.App. LEXIS 18596, at *11 (10th Cir. Aug. 12, 1998) (rejecting claim that the court had no jurisdiction over a member of the Washitaw as "frivolous"); Bey v. Louisiana, 2008 U.S. Dist. LEXIS 91606 (W.D. La. July 11, 2008) (finding that plaintiff's claim to land as a member of the Washitaw was "patently frivolous" and rested on documents of "dubious legal significance"); Great Seal Nat'l Ass'n of Moorish Affairs v. 46th Dist. Ct. of Oakland County, 2007 U.S. Dist. LEXIS 3199, at *2 (E.D. Mich. Jan. 17, 2007) (dismissing claim that plaintiffs owned several parcels of property by virtue of their Moorish ancestry as "baseless, fantastic and delusional" and finding the complaint to be "indecipherable"); Khattab El v. U.S. Justice Dep't, 1988 U.S. Dist. LEXIS 544, at *5 (E.D. Pa. Jan. 22, 1988) (holding that "the United States has not recognized the sovereignty of the Moorish Nation, thus precluding sovereign immunity claims").
>
> El-Bey v. United States, 2009 U.S. Dist. LEXIS 33838 (M.D.N.C. Jan. 26, 2009). Any claims or arguments raised by Plaintiff which are based on his membership in the Moorish American Nation are [by definition] frivolous.

Hampton v. City of Durham, 2010 U.S. Dist. LEXIS 100255, at *6-8 (M.D.N.C. Sept. 22, 2010).

Murakush-Amexem, _ F. Supp. 2d __, 2011 U.S. Dist. LEXIS 51887 at *78-88 (footnotes omitted).

## II. PLAINTIFFS' SUBMISSIONS IN THIS MATTER ARE FACIALLY DEFECTIVE

### A. Submission Received in Lieu of IFP Application Is Defective

Here, Plaintiffs' submission made, seemingly, in lieu of the IFP application (docketed in this action as Docket Entry No. 1-1), has the heading reading:

> THE MOORISH NATIONAL REPUBLIC
> MOORISH DIVINE AND NATIONAL MOVEMENT OF THE WORLD
> Aboriginal and Indigenous Natural Peoples of Northwest Amexem / North America
> Affidavit of Financial Statement
> (Exercise of Constitution — Secured Right)

Docket Entry No. 1-1, at 1 (capitalization and parenthetical marks in original).

It then reads: "Nin El Ameen Bey Authorized Representative, Natural Person, In Propria Persona: Ex Relatione Sherri Scafe: All Rights Reserved: U.C.C. 1-207/ 1-308;U.C.C. 1-103 Not a Corporate Person or Entity, Misrepresented by Fraudulent Construct of ALL CAPITAL LETTERS Schechabee Territory c/o 60 Orlando Drive Sicklerville, New Jersey Republic Zip Exempt [08081] Northwest Amexem Non-Domestic." Id. (hereinafter "Introduction Text") (capitalization in original, bolding removed).

This Introduction Text precedes the following statement (hereinafter "Boilerplate"):

> Notice of Judges and Officials' Oath - Bound Obligations and Fiduciary Duties
> Article VI
> "All debts contracted and engagements entered into, before the adoption of this Constitution, shall be as valid against the United States under this Constitution, as under the Confederation. This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding. The Senators and Representatives before mentioned, and the members of the several state legislatures, and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this Constitution; but no religious test shall ever be required as a qualification to any office or public trust under the United States."
> Article 1, Section X
> "All debts shall be payable in gold or silver coin"
> Amendment V
> " No Person shall be deprived of due process of law"
> I Affirm, for the Record, that I do not have, or possess, any gold or silver coins, as prescribed by United States Constitution Law, which is the lawful money to pay the restricting demands, conditionally commanded by Employees and Contractors of the Court. The said restrictions (unconstitutional) are arbitrarily (hindering Due Process) and imposed for processing these Documents, as stipulated in the United States Constitution noted above. Therefore, I submit this Writ "In Forma Pauperis", being an enjoyment and exercise of my unconditional and Constitutionally - Secured Rights (and not a feudal - fee - burdened privilege) to timely and speedily enforce Due Process of Law, as noted above.
> Your demand for a "Financial Statements" is used as an instrument to deny me due process of law and my right to free access to the courts. I introduced evidence in the form of an Affidavit of Fact and marked as Evidence. Someone in the courts tampered with

> that evidence, which is a Federal Violation, and misrepresented it as a Motion which is discretionary and an assumption that permission must be requested to exercise my Constitutional Rights and an exercise of a right is a Constitutional Right, not a Request and this office knows that. This is a direct violation of my "Secured Constitutional / Treaty Rights which is the Supreme Law of the Land and "Stare Decisis" and a violation of your "Oath of Office". Furthermore as there is no law as prescribed in the United States Constitution stating a "Financial Statement, "Financial Fee (Feudal Law)", or a "Motion" requesting permission must be submitted in order to exercise my Constitutional Rights, your demand is a violation of Amendment IX of the United States Constitution and a violation of your fiduciary duties.
>
> Amendment IX
>
> " The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people"
>
> *Where rights secured by the Constitution are involved, there can be no rule-making or legislation, which would abrogate them. Miranda v. Arizona 384 US 436, 125:*
>
> As an Officer(s) of the Court, you and your assigns are bound (or have taken) a solemn Oath (See Article VI) to uphold and Support the Constitution for the United States Republic. Refusal of this 'Affidavit of Financial Statement' is construed to deny me timely 'Due Process' and will be a 'Colorable Act' to violate my secured exercise of a Right. Such an act and imposition is a violation of your Official Oath of office. This can result in additional lawful remedy actions filed against those violating Officers of the Court, Under Title 18 and Title 42, in their official and private capacities. The Law always gives a remedy for the people against color of law actions committed by those who violate their Oaths of Office colluding to abridge the Rights secured for the Natural Beings and the citizens.
>
> I Respectfully, with 'Good Faith' and with Honor, by right to unhindered Due - Process, submit this 'Affidavit of Financial Statement' and Evidence.

Id. at 1-2 (capitalization, punctuation, italics and underlining in original, bolding removed).

### 1. Plaintiffs Utilized a Hoax "Moorish / Marrakush" Online Form

The above-quoted Boilerplate: (a) is readily available online, see, e.g., <<www.rvbeypublications.com/sitebuildercontent/sitebuilderfiles/webaffidavitoffinancialstatement.doc>>; and, it has even (b) become part of an online "self-help" book for the individuals desiring to re-qualify themselves into "sovereign citizens." See <<http://cheap-reads.com/sample/80296/how-to-beco

me-a-sovereign>>.[5]

This seemingly hoax Boilerplate is also among many boilerplate forms offered by the website <<http://www.rvbeypublication.com/id92.html>>. Titled "Writs of Freedom," this website offers a multitude of boilerplate forms to the readers whom the website defines as "those with a National Mindset and Consciousness." Id. All these boilerplate forms: (a) are "ready-to-fill," in the sense that the reader needs to type in only a few words of personal information into pages and pages of text; and (b) appear to be nothing but hoaxes, since the content of these forms lacks any legal rationale. See id. (offering a slew of oddly titled and equally odd, content-wise, products, such as "Removal To Supreme Court," "Judicial Notice And Proclamation," "Name Declaration, Correction And Publication," "General Writ Of Discovery," "Foreclosure Writ of Discovery & Disclosure," etc., as well as products having titles somewhat resembling actual legal documents but having the content that makes no sense legally). As noted supra, included in these offered-for-downloading boilerplates is the Boilerplate utilized by Plaintiffs. See id. The Boilerplate utilized by Plaintiffs is advertised on this website in the following terms:

---

[5] This online form and the one from the book have been widely used in federal and state courts by many self-proclaimed "sovereign citizens." See, e.g., <<http://www.nationalrepublicregistry.com/public/2011/MI/03.01.000001.pdf>> (the form used by an individual who referred to himself as "Malik Naiem Bey" to initiate an action in a Michigan state court); <<http://www.nationalrepublicregistry.com/public/2011/MI/02.14.000001.pdf >> (application to the same court by an individual who referred to himself as "Yusuf Rahim Bey"); <<http://www.scribd.com/doc/62133322/02-Suit-Against-State-of-Connecticut-Filed-121810>> (addressed to Connecticut state court by an individual who referred to himself as "Anaid A. El"); <<http://www.moorishnationpublicrecords.com/uploads/6/0/1/5/6015103/state_new_york_long_island_power_authority_suit_filed.pdf>> (addressed to the United States Supreme Court by an individual who referred to himself as "Andreah Asiyah Gabri'el Bey"); <<http://bowlesbey.files.wordpress.com/2011/04/pdf-fed-court-lawsuit.pdf>> (addressed to the United States District Court for the District of Columbia by an individual who referred to herself as "Mary-K-Bowles-Bey").

> This Writ is to be used whenever you are requested to submit finances for court filings. Courts attempt to hinder your judicial consitutional rights by requiring a filing fee. However this hinders your due process of law. The Constitution states ALL debts must be paid with gold or silver. Filing "In Forma Pauperis" affirms you have no gold or silver in which to pay, and thus relieves these restricting demands and ensures your contstituional rights to due process.

Id. (capitalization and spelling in original).

Moreover, the website also advises those litigants who were denied IFP status (due to their submission of the Boilerplate in lieu of a proper IFP application) as follows:

> WHEN YOUR "IN FORMA PAUPERIS" IS DENIED!
> The following Writs are an Answer to the Courts, who have denied your "Informa Pauperis. There are two Writs: a "Writ Of Error" to the Disrict Court who insists on calling your "Affidavit" a "Motion", which is "Tampering With Evidence". The Second Writ is a "Writ In the Nature of Discovery" requesting them to produce their Delegation of Authority higher than the Supreme Law. Of course, they cannot ever produce it, because there is no authority higher than the Supreme Law, and that is where their authority is derived. It becomes clear that they are violating the Law, and their limited authority (Amendment IX). They are acting or performing under "Color-Of-Law", which is a semblance of that which is real. It is up to You (the People) to ENFORCE THE CONSTITUTION against anyone who violates it against you.

Id. (exclamation mark, capitalization, punctuation and spelling in original).

The so-advertised "Writ Of Error Regarding Denial of In Forma Pauperis" and "Writ Of Discovery Regarding Denial of In Forma Pauperis" (collectively, hereinafter, "Follow-up Forms") are, too, readily available for downloading; as the Boilerplate and all other forms on the website, these Follow-up Forms appear to be nothing but hoaxes making no sense legally.[6]

---

[6] For instance, the "Writ of Error" boilerplate, being garnished with senselessly plucked excerpts from the United States Constitution, instructs to write to the court the following:

> I am in receipt of your instrument dated ____ signed by Deputy Clerk _______ regarding your response to the "Affidavit of Financial Statement". For the Record, On the Record, and Let the Record show, I am a Moorish National Aboriginal, Indigenous Natural Person, and not a nom-de-guerre, straw man or any other artificial corporate construct as written in all CAPITAL

Simply put, the website instructs the litigant how to abuse the courts with a slew of senseless follow-up submissions. None of these boilerplates have anything in common with the governing legal regime and the requirements set forth by the applicable statute.

---

> LETTERS, by the unclean hands of others. I am Sovereign to this Land and as such, this Administrative Court does not have lawful jurisdiction to hear, present, or pass judgment in any matter concerning my affairs under a quasi criminal non sanctioned tribunal of foreign private law process. In response to your misrepresented assumption that my Affidavit was a "Motion", let the record show, it was an exercise of right-"In Forma Pauperis". . . . Clearly your demand for a "Financial Statement" is used as an instrument to deny due process of Law and my right to free access to the Courts. I introduced an Affidavit of Fact, marked as Evidence. Someone in the Courts tampered with that Evidence, and misrepresented it as a Motion. A Motion is discretionary and an assumption that permission must be requested to exercise a Constitutionally Secured Right. An exercise of a Right is not a Request, and your office knows this to be "Stare Decisis", and the Law of the Land. Tampering with Evidence is a Federal Violation, and a clear corruption of the fiduciary duties of all Court Officers. Furthermore, there is no Law prescribed in the United States Constitution stating, or requiring a "Financial Statement, "Financial Fee (Feudal Law)", or a "Motion" to exercise a Constitutional Secured Right. Your demand is a violation of Amendment IX of the United States Constitution and a violation of my Secured Right to Due Process. . . . I Respectfully, with 'Good Faith', and with Honor, demand free access to the Court by Right, with said access unhindered. By rightful due process, I submit this 'Affidavit of Financial Statement' and Evidence, and demand that it be processed as it was originally intended and without tampering by any unauthorized persons. . . .

<<http://www.rvbeypublications.com/sitebuildercontent/sitebuilderfiles/webwritoerrortodistrictcourtfinanciaaffidavit.doc>> (capitalization, parenthetical and quotation marks in original). The "Writ of Discovery" boilerplate instructs the litigant whose above-quoted "writ of error" was dismissed, to file a submission asserting:

> This is a formal request for a certified copy of the "Certified Delegation of Authority Order" . . . . A response is required within 30 days of receipt of this Writ of Discovery. I, ________, do not, under any conditions or circumstances, nor by threat, duress, or coercion, waive any Unalienable Rights or any other Rights Secured by the Constitution or Treaty; and, hereby request that the Officers of this Court fulfill their Obligations to preserve the rights of this Petitioner (A Moorish American) and to carry out their delegated Judicial Duties with good behavior, and in 'Good Faith'. All UNCONSTITUTIONAL Citations - Summons / Ticket - Suits / (misrepresented) Bills of Exchange: Docket Number - SCC ______, and any other 'Orders' or 'Actions' associated with it or them, to be 'Dismissed', 'Abated' and expunged from the Record; being null on it's face and merits.

<<http://www.rvbeypublications.com/sitebuildercontent/sitebuilderfiles/webwritofdiscoverytodistrictcourt.doc>> (capitalization, quotation and parenthetical marks in original).

**2. Plaintiffs Will Be Denied IFP Status**

The statutory provision governing the issues associated with seeking and obtaining IFP status is clear. See 28 U.S.C. § 1915; see also Local Civil R. 5.1(f) (clarifying that the Clerk will not file a civil complaint unless the person seeking relief pays the entire applicable filing fee in advance or the person applies for and is granted in forma pauperis, status); 28 U.S.C. § 1914(a) (stating that the filing fee for filing a civil complaint is $350.00).

Section 1915 provides, in pertinent part:

> [A]ny court of the United States may authorize the commencement . . . of any suit . . . without prepayment of fees or security therefor, by a [person] who submits an affidavit that includes a statement of all assets such person possesses [and avers] that the person is unable to pay [the applicable filing] fees or give security therefor.

28 U.S.C. § 1915(a)(1);[7] see also Rohn v. Johnston, 415 Fed. App'x 353 (3d Cir. 2011) (since the plaintiff's ambiguous submissions, even if construed as a motion to proceed IFP, did not contain the required affidavit of poverty identifying *all of his assets* and *a declaration that he was unable to pay the required fees*, denial of IFP status without prejudice was proper because there was no way for the district court to properly determine the plaintiff's eligibility to proceed IFP) (relying on Sinwell v. Shapp, 536 F.2d 15, 19 n.14 (3d Cir. 1976)).

Here, Plaintiffs' Boilerplate provides this Court with nothing but gibberish mixed with senselessly-picked Latin terms, constitutional phrases and pointless rhetoric. It is entirely silent as to Plaintiffs' ability to pay the required fees and does not give this Court with even a hint as to

---

[7] Although Section 1915(a) refers to a "statement of all assets such prisoner possesses," this section has been applied by courts in their review of applications of non-prisoners as well. See, e.g., Douris v. Middletown Twp., 293 Fed. App'x 130 (3d Cir. 2008); Fridman v. City of New York, 195 F. Supp. 2d 534, 536 (S.D.N.Y. 2002); Clay v. New York Nat'l Bank, 2001 U.S. Dist. LEXIS 3209; (S.D.N.Y. Mar. 21, 2001).

each Plaintiff's assets.  (The included-in-the-Boilerplate "averment" that Plaintiffs possess no

"gold or silver coins" changes nothing for the purposes of this Court's analysis, since such fact,

even if true, does not indicate that Plaintiffs do not have assets within the meaning of Section

1915(a)).  Since this Court cannot intelligently render on Plaintiffs' IFP application, as it is

required by law, Plaintiffs' application to proceed in this matter IFP will be denied.  Such denial

will be without prejudice to Plaintiffs' submission of a *valid* IFP application by *each* Plaintiff.

See Hagan v. Rogers, 570 F.3d 146 (3d Cir. 2009) (*each* of the litigants proceeding as joint

plaintiffs must obtain in forma pauperis status in the event these litigants wish to prosecute their

action IFP); In re Bailey, 388 Fed. App'x 124 (3d Cir. Pa. 2010) (same); see also Hairston v.

Gronolsky, 348 Fed. App'x 716 (3d Cir. 2009) (regardless of the litigant's willingness or

unwillingness to prepay the filing fee, each litigant's "legal obligation to pay the filing fee [or

obtain IFP status, is automatically] incurred by the initiation of the action itself").

     In conjunction with the foregoing, this Court notes its concern with Plaintiffs' resort to

the Boilerplate instead of a valid IFP application.  However, granting Plaintiffs the benefit of the

doubt, the Court cannot rule out the possibility that Plaintiffs were simply misled (e.g., by the

above-described website or by an analogous publication, which Plaintiffs – being pro se litigants

– might have mistaken for a legitimate source of legal forms), and their submission of the

Boilerplate was not meant to operate as abuse of the legal system.  Therefore, the Court will

direct the Clerk to serve Plaintiffs with three court-authorized blank IFP forms for individuals

seeking to file a civil complaint: Plaintiffs will be obligated to complete *these* forms in the event

they wish to seek IFP status.  The Court strongly encourages Plaintiffs to complete these forms

with utmost care and diligence, without any resort to "Marrakush argot," rhetoric, constitutional

excerpts or akin. The Court reminds Plaintiffs that these affidavits will be deemed statements made under penalty of perjury. See 28 U.S.C. § 1746; 18 U.S.C. § 1621. Finally, the Court takes this opportunity to put Plaintiffs on notice that their submission of another Boilerplate, or their submission of such documents as the above-described Follow-up Forms (or Plaintiffs' resort to any other analogous "Marrakush" production) will *not* aid Plaintiffs in obtaining IFP status; on the contrary, Plaintiffs' submission of any such document will be construed as mockery of the court and as Plaintiffs' express refusal to seek IFP status pursuant to the requirements of Section 1915(a)(1), causing the instant proceedings to be conclusively terminated on the grounds of Plaintiffs' failure to prosecute this action. See Hookey v. Lomas, 2011 U.S. App. LEXIS 15078 (3d Cir. July 21, 2011) (where the plaintiff refused to pay the filing fee or file the required motion to proceed in forma pauperis, the plaintiff's action was dismissed for failure to prosecute); Arsad v. Gerula, 366 Fed. App'x 323 (3d Cir. 2010) (same). The Court, therefore, urges Plaintiffs to take this warning seriously. "The courts in this nation stand ready to address challenges brought by litigants in good faith. Which, in turn, means that the judiciary – including the Judges in this District – expect litigants to treat their litigation with utmost seriousness, without abusing legal process and without unduly testing of the resolve . . . of the judiciary." In re Telfair, 745 F. Supp. 2d 536 (D.N.J. 15, 2010).

**B. Submission Docketed as Docket Entry No. 1 Is Defective**

While, as detailed supra, Plaintiffs' decision to submit the Boilerplate in lieu of valid IFP applications is concerning, the content of Plaintiffs' submission docketed as Docket Entry No. 1 (hereinafter "Pleading") appears to be even more problematic.

### 1. The Content of Plaintiffs' Submission Suggests That It Might Have Been Made For Purposes Other Than *Bona Fide* Litigation

Since Plaintiffs' Pleading is an eighteen-page document, full replication of the same in the instant Opinion would be unwarranted. Granted that the first couple pages of the Pleading are indicative of the style of whole submission, excerpts from these initial pages appear sufficient. The Pleading bears the following heading:

> Moorish National Republic Federal Government
> THE MOORISH DIVINE AND NATIONAL MOVEMENT OF THE WORLD
> Northwest Amexem / Northwest Africa / North America
> Societas Republicae Ea Al Maurikanos
> Aboriginal / Indigenous, Natural Peoples of the Land
> The True and De jure Al Moroccans / Americans
> *Affidavit Certificate of Dishonor Judgment*
> Notice to agent is notice to principal Notice to Principal is Notice to Agent[[8]]

[8] This heading is accompanied by following statement:

> Responder: Nin El Ameen Bey, Ex Rel. SHERRI Y. SCAFE, Natural Person / Indigene; In Propria Persona (*and not Pro Se*) Non-Domestic and Non-Subject. Nationality I Identity: Moor / Moorish American - Aboriginal Natural Person of the Organic Land / 'The North Gate' Status: Aboriginal / Indigenous; Descendant of the Ancient Ones / Moabites / Moors - Northwest Amexem / Northwest Africa / North America; Freehold by Birthright, Inheritance and Primogeniture Status. Jurisdiction / Venue: Societas Republicae Ea Al Maurikanos / Moorish National Republic Federal Government; United States Republic, (De Jure.) Constitution, Treaties, Article III, Section 2; Article VI; International Law; Rights of Indigenous Peoples - General Assembly. Continent: Territorial Jurisdiction: Northwest Amexem / Northwest Africa / North America; Geographical Location - the Organic Lands of the Western Hemisphere (Al Moroccan / Americana); And Not a subject, foreign, nor artificial, corporate fictional, U.S. Citizen (created on paper).

Docket Entry No. 1, at 1 (capitalization, parenthetical and forward slashes in original, emphasis supplied). While this language is already problematic, being composed of typical Marrakush argot, the statement of Plaintiff Sherry Y. Scafe a/k/a "Nin El Ameen Bey" ("Scafe") that she: (a) is not a pro se litigant; and (b) represents two other Plaintiffs (identified under their "attributes" "Kamiylah A. El Ameen Bey" and "Eloha N. El Ameen Bey"), is particularly concerning, since Scafe, not being a counsel admitted to practice before this Court, cannot represent any person except herself (and she cannot even represent herself unless she is a pro se litigant). See Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. Inc., 528 U.S. 167, 180-81 (2000); Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990); Hettler v. Kahn, 2002 U.S. Dist. LEXIS 25371 (D.

Docket Entry No. 1, at 1 (capitalization and italics in original, bolding removed).

Then, Plaintiffs provide a list of the persons named as defendants, which includes: "John Stumpf and spouse," "Mark C. Oman and spouse," "Noecole Hackett and spouse," "Mary Gichure and spouse" and "Lachell Brown and spouse"; this list is accompanied by statements indicating that the defendants identified by their names are employees of Wells Fargo Bank, mortgage group, while the hypothetically-existing "spouses" were named as defendants because Plaintiffs fancied that the defendants identified by names might be married. See id. At the end of the list, there is a phrase reading, "Account Number: 02579561361." Id. That phrase suggests that the Pleading might have been filed in response to a Wells Fargo's mailing of a notice (or commencement of a legal action) seeking either mortgage payments from Plaintiffs or seeking to evict Plaintiffs from (or to foreclose) a certain real estate property currently occupied/squattered by Plaintiffs.

The following two pages of the Pleading read:

> On January 24 2011 an " Writ in the Nature of Discovery and Disclosure of all Contracts & Adhesion / Allonges, was sent to the above listed individuals regarding a loan which is in controversy. On February 17, 2011 an "Notice of Default" was sent to the above listed individuals regarding dishonor due to incomplete non - germane information provided in regard to "Discovery and Disclosure." On March 10, 2011 an "Second Notice of Default "was sent to the above listed individuals regarding dishonor due to incomplete non — germane information provided in regard to "Notice of Default." On April 1, 2011 an "Affidavit of Fact: "Notice of Default Judgment" and Compensatory Invoice for expenditures, was sent to the above listed individuals regarding dishonor due to incomplete non — germane information provided in regard to "Second Notice of Default." On April 18, 2011 an " Reconveyance " was sent to above listed individuals regarding dishonor due to non response in regard to the unsigned and unidentified, MORTGAGE AND ELECTION TO SELL UNDER DEED OF TRUST. The defendants

---

Minn. Dec. 10, 2002); Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, at *96-102; see also Accord Local Civil Rule 11.1 ("In each case, the attorney of record who is a member of the bar of this Court shall personally sign all papers submitted to the Court or filed with the Clerk").

have failed to cease collection activity until timely Disclosure and validation of the Debt, therefore Default Judgment was applied pursuant to the following Maxims of Law: In Addition, a" "Quit Claim - Transfer of Inheritance" and "Al Seisin In Deed" regarding Lat / Long: 39.736576 74.983482 L 60 Orlando Drive Near Corporate SICKLERVILLE NEW JERSEY 08081 Northwest Amexem *was also filed on the public record with the Federal District Court of New Jersey*, United Nations, International Criminal Court, International Court Of Justice, The Federal Bureau of Investigation — New jersey, Philadelphia Pennsylvania, and Washington DC, United States Justice Department, United States Department of State, and was also publicly published. (http://rnoorishnews.wordpress.com/)

- In Commerce Truth is Sovereign
- Truth is Expressed in the Form of an Affidavit
- An Unrebutted Affidavit Stands as Truth in Commerce
- An Unrebutted Affidavit Becomes the Judgment in Commerce
- He Who Leaves the Battlefield First Loses by Default

The following has been initiated based on the Supreme Law of the Land, the Untied States Republic Constitution I Treaty, and Declarations by the United Nations and the Vienna Convention. As Nin El Ameen Bey is a Moorish American National, Jus Sanguinis, she is protected under International Law, the United States Republic Constitution and the Treaty of Peace and Friendship 1787. Jus Sanguinis — Citizenship is not determined by place of birth, but by having a parent(s) who are citizens of the nation. Jus Sanguinis rights are mandated by international treaty, with citizenship definitions imposed by the international community. In accordance with the Treaty of Peace and Friendship, the agreement between Europeans and Moors was to allow Europeans to come to this land and engage in Life Liberty, and the Pursuit of Happiness free of oppression as was not the case on the land today known as Europe. The Treaty is in no way gave any land as the land and resources is and are inheritance of the People and is/are Unalienable and Inalienable. Black's Law 4th Edition Dictionary Unalienable — Inalienable; incapable of being aliened, that is, sold and transferred. Inalienable - Not subject to alienation; characteristic of those things which cannot be Bought or sold or transferred from one person to another, such as rivers and public highways, and certain personal rights, e.g., liberty. It can never be sold by one or all, it cannot be contracted, it cannot be transferred, it cannot be obtained by intermarriage, or interbreeding. In Accordance with Title 22 Chapter 2 sections 141-143 Consular Courts - Act August 1, 1956 Repealed sections 141 to 143 effective upon the date which the President determined to be appropriate for the relinquishment of jurisdiction of the United States in Morocco, Jurisdiction of the United States in Morocco was relinquished by memorandum of President Eisenhower dated September 15, 1956 and The Sundry Free Moors Act of 1789 - 1790 Consular Court was convened on April seventeenth, One thousand four hundred and thirty-first one year of Allah, (C.C.Y. 2011 ) it was determined by the Moors of this land that the Case Number for this issue will be the Post Master Article Number: 7010 3090 0001 9689 4933, which was sent to WELLS FARGO HOME MORTGAGE BANK. As all parties to this issue where lawfully notified and copies of the Writ was sent

to each certified mail - See Certificate of Mailing and received. And each Defendant was given ten (10 ) days to respond that date being April 6, 2011, and As no rebuttal was received from any of the Defendants, a Default Judgment was sent certified mail on April 5, 2011 and was publicly published (http://w.w.w.moorisinationpublicrecords.com/ recording-of-default-and-liens.html) and submitted to the United Nations, International Criminal Court, International Court of Justice, The Federal Bureau of Investigation New Jersey, Philadelphia Pennsylvania, and Washington DC, United States Justice Department, United States Department of State. In Accordance with the United States Republic Constitution Article I of the Bill of Rights: Congress shall make no law ... petition the government for a redress of grievances. The Writ / Petition was lawfully submitted, as there was no rebuttal within the ten (10 ) day allotted timeframe, nor the additional days allotted making the total time to rebut approximately one-hundred seventy (170) days. Standard for any rebuttal is thirty ( 30 ) days therefore with dishonor the parties to this Writ / Petition have not rebutted and this issue stands as Judgment. Again!

- in Commerce Truth is Sovereign
- Truth is Expressed in the Form of an Affidavit
- An Unrebutted Affidavit Stands as Truth in Commerce
- An Unrebutted Affidavit Becomes the Judgment in Commerce
- He Who Leaves the Battlefield First Loses by Default

The following judgment is as follows:
*The Land and Resources: geographical at Latitude 39.736576 — Longitude — 74.983482 do 60 Orlando Drive Near Corporate Sicklerville, New Jersey State Northwest Amexem - 'The North Gate' is henceforth cured and reverts back to the true heirs the land and resources*, The Moors of Northwest Amexem - North America - North Gate Aboriginal Indigenous People of the Land. All Plaintiff's named is said Writ / Petition file No# 7010 3090 0001 9689 4933 are ordered to pay the following:$5,273,220 for compensatory damages and $5,273,220 for punitive damages, payable in lawful money in accordance with the Coinage Act of April 2, 1792 or as petitioner(s) have specified "reserve the right to settle for a lesser fee ", payable per petitioner. For all unpaid damages the Petitioners have the lawful right to attached a" Lien" to all assets off by each Plaintiff their spouse and any heirs until said torts have been cured. This notice has been forwarded to the United Nations, International Criminal Court, International Court of Justice, United States Justice Department, Honorable President Barack Obama, New Jersey Attorney General's Office, Sheriff's Office, New Jersey Governors Office, New Jersey Secretary of State Office, and Recorded for the Public Record on the County level, and Published via (http://moorishnews.wordpress.com/) The above is in Accordance with the following provisions, Constitution, and Treaties derived from ancient Moorish Law, and Declarations: In accordance with the Declaration of Independence - We hold these truths to be self evident, that all Men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty , and the Pursuit of Happiness - That to secure these Rights, Governments are instituted among Men, deriving their just Powers from the Consent of

> the Governed, that whenever any Form of Government becomes destructive of these Ends, it is the Right of the People to alter or abolish it. . . . [[9]]

Docket Entry No. 1, at 2-3 (capitalization, low casing, underlining in original; bolding and brackets removed; emphasis supplied). In light of the above-quoted content of the Pleading, this Court cannot rule out the possibility that Plaintiffs did not commence this matter with bona fide

---

[9] The Court takes this opportunity to note that the language of Plaintiffs' Pleading largely follows hoax boilerplate forms and analogous disseminations available at various "Moorish" and/or "Marrakush" websites, such as <<http://www.moorishnationpublicrecords.com/recording-of-defaults-and-liens.html>>; <<http://www.moorishnationpublicrecords.com/index.html >>. Indeed, some pages of the Pleading appear to be copied from many online "documents." See, e,g., <<http://moorishnews.wordpress.com/2011/01/24/judgment-filed-1-22-2011-regarding-moor-of-northwest-amexem/>> (providing the language utilized in pages 1 to 5 of the Pleading); <<http://d.scribd.com/ScribdViewer.swf?document_id=51863099&access_key=key-yrxh904rv6iyutj4tyb&page=1&version=1&viewMode=>> (proving the language utilized in pages 6 and 7 of the Pleading); <<www.moorishnationpublicrecords.com/uploads/6/0/1/5/6015103/02-suit_against_state_of_connecticut_filed_121810.pdf >> (proving the language utilized in pages 8 and 9 of the Pleading); <<http://moorishnews.wordpress.com/2011/01/21/transfer-of-inheritance-by-the-moors-of-north-amexem-north-america-north-gate-previously-published-12182010/>> (same); <<http://d.scribd.com/ScribdViewer.swf?document_id=62842356&access_key=key-1nabmqugrvktt12qim2y&page=1&version=1&viewMode=>> (same); <<http://www.moorishnationpublicrecords.com/uploads/6/0/1/5/6015103/public_notice_-_zilliah_s._el_v2.pd f>> (proving the language utilized in page 10 of the Pleading); <<http://d.scribd.com/ScribdViewer.swf?document_id=62842356&access_key=key-1nabmqugrvktt12qim2y&page=1&version=1&viewMode=>> (same); <<http://d.scribd.com/ScribdViewer.swf?document_id=62842356&access_key=key-1nabmqugrvktt12qim2y&page=1&version=1&viewMode=>> (proving the language utilized in pages 11 to 14 of the Pleading); <<www.moorishnationpublicrecords.com/uploads/6/0/1/5/6015103/02-suit_against_state_of_connecticut_filed_121810.pdf >> (proving the language utilized in pages 15 and 16 of the Pleading); <<http://d.scribd.com/ScribdViewer.swf?document_id=62842356&access_key=key-1nabmqugrvktt12qim2y&page=1&version=1&viewMode=>> (proving the language utilized in page 17 of the Pleading); and <<http://www.moorishnationpublicrecords.com/uploads/6/0/1/5/6015103/zilliah_-_ltr_to_superior_administrative_services_011311.pdf >> (proving the language utilized in page 18 of the Pleading). It appears that abuse of judicial docketing system by "Moorish"/"Marrakush" individuals attempting to avoid their mortgage obligations or to hinder foreclosure proceedings againt their property is not atypical. See, e.g., <<http://caselaw.findlaw.com/ct-superior-court/1508803.html >> (a decision entered by the Superior Court of Connecticut in Bank of America, N.A. v. Fabiola Derisme et al., Civil Action No. 96004583S, with regard to a note and foreclosure of a mortgage proceeding instituted against an "Aboriginal Moorish American").

litigation in mind. Indeed, the content of the Pleading suggests that Plaintiffs might be attempting to capitalize on the docketing system of federal courts in general, and this District in particular, in order to: (a) assert that their Pleading is "on file" with this District; and then (b) build on this fact by self-declaring their right to a certain real estate property (seemingly, 60 Orlando Drive, Sicklerville, New Jersey), and by claiming that this property is free from mortgage encumbrances held, seemingly, by the Wells Fargo Bank. See id.

If so, and to the extent the Pleading was submitted to this District for the purposes other than bona fide litigation, the Clerk will be directed to strike the Pleading from the docket in order to ensure that this District's docketing system would not get highjacked for illegal purposes.

**2. If Plaintiffs' Submission Meant To Be a Complaint, It Is Defective**

However, at this juncture, the Court cannot also rule out the possibility that this gibberish-filled eighteen-page single-spaced Pleading was submitted by Plaintiffs as a result of their good-faith reliance on a hoax source, which misled Plaintiffs into believing that the Pleading could operate as a valid civil complaint. The Court, therefore, finds it warranted to provide Plaintiffs' with guidance as to the requirements applicable to a civil complaint and will direct the Clerk to serve Plaintiffs with a court-approved blank civil complaint form: so Plaintiffs would have an opportunity to cure the deficiencies of their current Pleading by submitting a meaningful amended complaint.

**a. A Civil Complaint Must Be a Clear and Concise Statement**

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). However, any civil

complaint must conform to the requirements set forth in Rules 8(a) and (e) of the Federal Rules of Civil Procedure. The Rules require that the complaint be *simple, concise*, direct and set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (emphasis supplied); cf. McNeil v. United States, 508 U.S. 106, 113 (1993) (procedural rules in civil litigation should not be interpreted so as to excuse mistakes by those who proceed without counsel); Burks v. City of Philadelphia, 904 F. Supp. 421, 424 (E.D. Pa. 1995) (pleading which represented a "gross departure from the letter and the spirit of Rule 8(a)(2)" in failing to contain a short and plain statement of claims struck by District Court); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (affirming dismissal of pro se civil rights complaint naming numerous defendants, setting forth numerous causes of action, and numbering fifteen pages and eighty-eight paragraphs).

Here, the Pleading is neither short nor plain, and it shows, if anything, that Plaintiffs are not entitled to relief. Therefore, the Pleading will be dismissed without prejudice, pursuant to Rule 8. In the event Plaintiffs elect to execute their amended complaint, *Plaintiffs should do it by stating their allegations in short and plain matter*, without any resort to "Marrakush argot," pointless rhetoric, senselessly-picked Latin terms, irrelevant constitutional excerpts, etc. Cf. Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990), for the observation that a pleading must indicate "the who, what, when, where, and how: the first paragraph of any newspaper story"). Therefore, the Court: (a) strongly encourages Plaintiffs to utilize the pre-printed civil complaint form provided to them by the Clerk; and (b) expressly warns Plaintiffs that, *in the event Plaintiffs elect to submit*

*another gibberish production in lieu of a valid amended pleading, such submission will be dismissed with prejudice, without allowing Plaintiffs another opportunity to state their claims.*

**b. Any Reliance on the Barbary Treaties in General, or on the Treaty With Morocco in Particular, Is Facially Frivolous**

Here, Plaintiffs' Pleading repeatedly asserts that Plaintiffs have certain rights with regard to a certain real estate property (or rights against defendants employed by the Wells Fargo Bank, mortgage group) on the basis of "the Treaty of Peace and Friendship 1787." From this reference, this Court gathers that Plaintiffs are referring to the Treaty with Morocco.[10] However, as this Court already explained in Murakush-Amexem, a litigant's reliance on any Barbary Treaty, including on the Treaty with Morocco, for the purposes of a civil suit raising claims based on the events that occurred within what is the United States' geographical territory is facially frivolous, see Murakush-Amexem, _ F. Supp. 2d __, 2011 U.S. Dist. LEXIS 51887 at *79-86, and that includes any claims related to real estate property located within the United States, collection of mortgage payments, foreclosure or eviction proceedings, etc. See Bank of Am., N.A. v. Derisme,

[10] The phrase "Treaty of Peace and Friendship of 1787" refers to the Treaty with Morocco sealed by the Emperor of Morocco on June 23, 1786, and ratified by the United States July 18, 1787. The Treaty with Morocco is one of the Barbary Treaties (executed, during 1795-1836 between the United States and semi-autonomous North African city-states of Algiers, Tunis, and Tripoli, and the Sultanate of Morocco). Over the centuries past, these treaties went through numerous superceding reconfirmations and full or partial terminations. See, e.g., 1795 U.S.T. LEXIS 6, 1815 U.S.T. LEXIS 4, 816 U.S.T. LEXIS 6 (noting superceding developments as to the Treaty with Algiers and its turning obsolete upon Algiers becoming French province); 1805 U.S.T. LEXIS 1 (noting termination of the Treaty with Tripoli in 1912, upon United States recognition of Italian sovereignty over Libya); 1836 U.S.T. LEXIS 10 (noting termination in part of the Treaty with Morocco on Oct. 6, 1956); Ruth E. Gordon, Some Legal Problems with Trusteeship, 28 Cornell Int'l L.J. 301, 347 (1995) (noting loss of independence by the Moroccan sultanate in 1912, after the Treaty of Fez); <<emph typestyle="un">http://avalonlaw.yale.edu/ 18th_century/bar 1786n.asp#n4>> (explaining the need for superceding re-confirmations of the Treaties upon each "coronation" due to their unique "personal-assurances-of-the-ruler" nature).

2010 Conn. Super. LEXIS 119, at *5-6 (Conn. Super. Ct. Jan. 21, 2010) ("As its title indicates, the treaty is one of 'Peace and Friendship' between the sovereign states of Morocco and the United States, and it provides that subjects or citizens of each country will be held safe by the other, as well as a protocol for any confrontations that might arise between the two countries while at sea, during trade or battle. It does not contain any language suggesting that the United States, or any state or territory therein, does not have jurisdiction over a person violating the law within its jurisdiction") (quoting Pitt-Bey v. District of Columbia, 942 A.2d 1132, 1135 (D.C. App. 2008)); see also McLaughlin v. CitiMortgage, Inc., 726 F. Supp. 2d 201 (D. Conn. 2010) (dismissing claims by a Moorish litigant that "The aforementioned Indigenous Real Private Property is now free from encumbrances and is now and forever exempt from levy. The Indigenous Real Private Property is now under the jurisdiction of Shakir Ra Ade Bey, a Moor; Indigenous Sovereign to the Land"). Therefore, in the event Plaintiffs elect to submit for filing an amended pleading, *Plaintiffs shall not assert any claims based on the Barbary Treaties in general or on the Treaty with Morocco in particular*, since any such claim would be facially frivolous. See Murakush-Amexem, _ F. Supp. 2d __, 2011 U.S. Dist. LEXIS 51887 at *86-88.

**c. Plaintiffs Must Plead Facts Showing Personal Liability By Each Named Defendant**

Supervising officials cannot be held liable for actions of their subordinates unless the litigant asserts facts showing these supervisors' personal involvement in the alleged wrongs. See Iqbal, 129 S. Ct. 1937; Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993). Thus, claims against the supervisors are subject to dismissal to the degree they are based solely on the

respondeat superior theory. See Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation – even if it is operation under contract with the state – cannot be held liable for the acts of its employees and agents under those theories).

Moreover, even if the litigant's claims are not based on the doctrine of respondeat superior, the litigant still must assert specific facts implicating each named defendant in the alleged wrong: personal involvement by a defendant is an indispensable element of a valid legal claim. See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995); Sample, 885 F.2d at 1100; Rode, 845 F.2d at 1207; accord Mimms v. U.N.I.C.O.R., 2010 U.S. App. LEXIS 14321, at *4 (3d Cir. July 13, 2010) ("The District Court properly dismissed the claims against [those defendants with regard to whom the plaintiff] simply failed to state any allegation," citing Iqbal, 129 S. Ct. at 1949).

Here, Plaintiffs named, as defendant in this action, "John Stumpf and spouse," "Mark C. Oman and spouse," "Noecole Hackett and spouse," "Mary Gichure and spouse" and "Lachell Brown and spouse." See Docket Entry No. 1, at 1. Plaintiffs' submission indicated that Stumpf is the CEO of the Wells Fargo Bank, Oman is the president of the same, while Hackett, Gichure and Brown are employees of the Bank's correspondence department within its mortgage group.[11] See id. However, Plaintiffs cannot assert viable claims against Stumpf and Oman merely on the basis of their supervisory positions, just as Plaintiffs cannot assert viable claims against Hackett,

---

[11] In actuality, Mark Oman is senior executive vice president for Wells Fargo & Company, while John G. Stumpf is the president and CEO of the same. See <<https://www.wellsfargo.com/about/corporate/executive_officers/stumpf>> and <<https://www.wellsfargo.com/about/corporate/executive_officers/oman>>.

Gichure and Brown without stating the facts showing that Hackett, Gichure and Brown were personally involved in the alleged wrongs. A fortiori, Plaintiffs cannot assert claims against these defendants' hypothetically-existing spouses on the mere basis of these spouses' marital ties.

Thus, in the event Plaintiffs elect to submit an amended pleading, Plaintiffs shall detail, clearly and concisely, the facts showing *each* defendant's involvement in the alleged wrongs.

**d. Each Plaintiff Must Have Standing to Sue**

Under the "next friend" doctrine, standing is allowed to a third person so this third person could file and pursue a claim in court on behalf of someone who is unable to do so on his or her own. The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case or controversy" requirement set forth in the Article III of Constitution. See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990). The Whitmore Court set out two requirements that should be met by the one seeking to qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [(s)he] seeks to litigate" (and it has been suggested that a "'next friend' must have some significant relationship with the real party in interest"); and (2) "the 'next friend' must provide an adequate explanation – such as inaccessibility, mental incompetence, or other disability – why the real party in interest cannot appear on his own behalf to prosecute the action." Id. at 163-64.

Since Witmore, the Supreme Court further elaborated the standing requirements of Article III in terms of a three-part test, i.e., whether the plaintiff can demonstrate an injury in fact that is fairly traceable to the challenged actions of the defendant and likely to be redressed by a favorable judicial decision. See Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 102-103 (1998). However, "the point has always been the same: whether a plaintiff 'personally

would benefit in a tangible way from the court's intervention.'" Id., at 103 n. 5 (quoting Warth v. Seldin, 422 U.S. 490, 508 (1975)); see also, Sprint Communs. Co., L.P. v. APCC Servs., 554 U.S. 269, 301 (2008) (Roberts, J., dissenting) ("The absence of any right to the substantive recovery means that respondents cannot benefit from the judgment they seek and thus lack Article III standing. 'When you got nothing, you got nothing to lose'") (quoting, with correction of grammar, Bob Dylan, Like A Rolling Stone, in On Highway 61, Revisited (Columbia Records 1965)).

Here, Plaintiff Scafe a/k/a "Nin El Ameen Bey" indicated that she was aiming to litigate this action on behalf of two other Plaintiffs, identified under their "attributes" as "Kamiylah A. El Ameen Bey" and "Eloha N. El Ameen Bey." However, Plaintiffs cannot litigate each other's claims jus tertii: *each Plaintiff must establish her own standing to prosecute her own claims*. Therefore, in the event Plaintiffs elect to submit an amended pleading, Plaintiffs shall state, clearly and concisely, the injury suffered by *each* Plaintiff as a result of the alleged wrongs committed by defendants.

**e. Each Plaintiff Must Have Proper Representation**

Finally, the Court takes this opportunity to remind Plaintiffs that, unless Plaintiffs obtain for themselves counsel duly admitted to practice in this District, see Local Civil Rule 11.1 ("In each case, the attorney of record who is a member of the bar of this Court shall personally sign all papers submitted to the Court or filed with the Clerk"), or each Plaintiff *must* proceed pro se: applications submitted "not pro se" and without assistance of a duly admitted counsel will not be entertained. If Plaintiffs elect to proceed pro se, *each* Plaintiff must supply his or her legal name

(which means birth name or legally changed name), correct street address and postal address of residence, as required by Local Civil Rule 10.1(a).[12]

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs will be denied in forma pauperis status; such denial will be without prejudice to seeking in forma pauperis status by submitting each Plaintiff's duly executed *court-approved* application form.  The submission docketed as Docket Entry No. 1 will be deemed stricken from the docket for any purposes other than initiation of bona fide litigation. The Clerk will be directed to clarify that the mere fact of this submission being entered on the dockets of this District cannot be construed or otherwise used as evidence of or as a fact conferring directly, by implication, estoppel or otherwise any license, property or any other right upon Plaintiffs.   In alternative, the submission docketed as Docket Entry No. 1 will be dismissed without prejudice to Plaintiffs' timely filing of *a clear and concise amended complaint executed in strict compliance with the guidance provided to Plaintiffs herein*.

An appropriate Order accompanies this Opinion.

s/Robert B. Kugler
**ROBERT B. KUGLER**
**United States District Judge**

Dated:  October 17, 2011

---

[12]  See Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, at *96-97 (explaining that, "[i]n order to be a litigant in legal proceedings, the litigant -- regardless of whether it is a juridical entity or a natural person -- must actually exist.  'It is elemental that in order to confer jurisdiction on the court the plaintiff must have an actual legal existence, that is he or it must be a person in law or a legal entity with legal capacity to sue. [The plaintiff cannot be deemed existing if it] is neither a natural nor artificial person, but is merely a name.'  Isaac v. Mount Sinai Hospital, 3 Conn. App. 598, 600, 490 A.2d 1024, cert. denied, 196 Conn. 807, 494 A.2d 904 (1985) (citing 59 Am. Jur. 2d, Parties, §§ 20, 21); see also De Paul Community Health Center v. Trefts, 688 S.W.2d 379 (Mo. Ct. App. 1985)").